UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KARA BRANSON, )<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>NEWBURGH POLICE DEPARTMENT, )<br>and TOWN OF NEWBURGH, )<br>    Defendants. )<br>---------------------------------------------------------<br>CONSOLIDATED WITH: )<br>)<br>RAY S. FARMER, )<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>NEWBURGH POLICE DEPARTMENT, )<br>and TOWN OF NEWBURGH, )<br>    Defendants. ) | 3:09-cv-00154-RLY-WGH |

**ENTRY ON DEFENDANTS NEWBURGH POLICE DEPARTMENT'S AND TOWN OF NEWBURGH'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Newburgh Police Department ("NPD") and the Town of Newburgh (the "Town") (collectively, "Defendants"), move for partial summary judgment as to all claims except Plaintiff Kara Branson's ("Branson") state law tort claim for assault. Specifically, Defendants claim first, that no grounds for imposing civil liability exist, because Defendants did not violate the Fourth Amendment of the United States Constitution; second, that due to the absence of any unconstitutional policy, practice or

1

custom, no basis for imposing municipal liability exists; and third, that any state law tort claims, other than Branson's state law tort claim for assault, are not cognizable or are barred by immunity under the Indiana Tort Claims Act ("ITCA"). For the reasons set forth below, the court **GRANTS in PART** and **DENIES in PART** Defendants' motion for partial summary judgment.

**I.     Facts**

1. Brett E. Sprinkle ("Chief Sprinkle") is Chief of Police with the Newburgh Police Department. (Affidavit of Brett E. Sprinkle ("Sprinkle Affidavit") ¶ 1).

2. On November 10, 2007, Chief Sprinkle investigated and interviewed a suspect (the "Informant") regarding his involvement in the crimes of robbery and cocaine possession. (*Id.* at ¶ 2).

3. After conducting an initial interview with the Informant, which was transcribed (Exhibit 1 to Sprinkle Affidavit), Chief Sprinkle interviewed the Informant again. (*Id.* at ¶¶ 3-4).

4. During the second interview, the Informant told Chief Sprinkle that he purchased the cocaine that was in his possession earlier from Josh Price ("Price") at 214 Washington Street, Newburgh, Indiana (the "Residence"), where Branson resided. (*Id.* at ¶ 4). The $300 used to purchase the cocaine was obtained earlier in a robbery at Knob Hill Tavern. (*Id.*). Branson was at the Residence when the Informant purchased the cocaine from Price. (*Id.*). The Informant knew cocaine would be at the Residence, because he had seen Branson walking down the street

earlier, stopped her to ask whether Price was at the Residence, and was told that Price would be there later. (*Id.*).

5. After the second interview, Chief Sprinkle orally applied for a warrant to search the Residence, and conveyed to the Honorable Keith A. Meier ("Judge Meier") the information conveyed to him by the Informant. (Sprinkle Affidavit ¶ 5; Exhibit 2 to Sprinkle Affidavit ("Transcript of Hearing")).

6. Judge Meier issued a search warrant for the Residence. (Sprinkle Affidavit ¶ 6; Exhibit 3 to Sprinkle Affidavit ("Search Warrant")). The warrant authorized officers executing the search to enter with force if the officers are not admitted following an announcement of their authority and purpose. (Search Warrant, at 2).

7. On November 11, 2007, at approximately 11:30 p.m., Chief Sprinkle executed the search warrant along with Officers Chad Bailey ("Officer Bailey"), Jon Scully ("Officer Scully"), Mike Perry ("Officer Perry"), and Sergeant Darrel Healy ("Sgt. Healy"). (Sprinkle Affidavit ¶ 4). Chief Sprinkle and Officers Bailey and Scully approached the front door, while Sgt. Healy watched the back of the apartment. (*Id.*). At the front door, Chief Sprinkle knocked loudly four times and announced "Police Search Warrant" twice, after which Officer Bailey began to count out loud for ten (10) seconds. (*Id.*).

8. After the countdown, Chief Sprinkle began to kick the front door of the Residence to gain entry, but before forcible entry could be achieved, a white male opened the door. (Sprinkle Affidavit ¶ 8).

3

9. Upon gaining entry, Chief Sprinkle and Officers Bailey and Scully performed a quick sweep to find the Residence's occupants, Branson and Farmer, who identified themselves. (*Id.* at ¶¶ 9-10). Branson was wearing a pair of boxer shorts and a t-shirt with no bra and no panties. (Affidavit of Kara Branson ("Branson Affidavit") ¶ 4).

10. Chief Sprinkle read Branson and Farmer their *Miranda* rights and had each of them read an Advice of Rights form. (Sprinkle Affidavit ¶ 10; Affidavit of Chad Bailey ("Bailey Affidavit") ¶ 3). After representing that they understood the form, Branson and Farmer signed the forms. (Sprinkle Affidavit ¶ 10). At this time, Chief Sprinkle also provided Branson and Farmer with a copy of the search warrant. (*Id.* at ¶ 11).

11. Branson then voluntarily told Chief Sprinkle that she had some marijuana in her dresser drawer. (Sprinkle Affidavit ¶ 12; Bailey Affidavit ¶ 4).

12. After Branson became upset at the discovery of sex toys and videos, because they were unrelated to the marijuana she admitted having in her apartment (Branson Affidavit ¶ 10), Chief Sprinkle alleges that Branson was taken to a patrol car with the heat running. (Sprinkle Affidavit ¶ 13). Although Farmer initially cooperated, Chief Sprinkle alleges that he became argumentative when confronted with evidence that he had not been truthful; therefore, he was also taken to a patrol car with the heat running. (*Id.*). Chief Sprinkle also alleges that Sgt. Healy watched Branson and Farmer in the patrol cars while Chief Sprinkle and Officers Scully,

4

Bailey, and Perry searched the Residence. (*Id.* at ¶ 14).

13. Branson disputes ever being placed in the patrol car with the heat running, instead alleging that she was never allowed to leave the Residence. (Branson Affidavit ¶ 9).

14. Branson also contends in her version of the events that "police busted in the door to [her] apartment, began searching and tearing everything up, accusing [her] and [her] boyfriend of dealing drugs, kicked [her] cat, spat in her sink, assaulted [her], and told [her] [her] boyfriend was going to jail if [she] did not admit to possessing marijuana," but told her no one would go to jail if she just admitted to it. (Defendants Exhibit C ("Branson's Answer to Interrogatories"), at 3; Branson Affidavit ¶ 3).

15. Finally, Branson alleges that Officer Bailey patted her down, starting at her shoulders, moving under her arms and around her breasts, taking longer than necessary with her breasts. (Branson's Answer to Interrogatories, at 4-5; Branson Affidavit ¶ 4). Then, he patted down her waist, down the outside of her legs to her bare feet, and then down the inside of her legs, starting in the groin area all the way down to her feet. (*Id.*) Officer Bailey's fingers went under her boxer shorts to bare flesh, and he penetrated her vaginal area with his fingers, smirking the whole time. (*Id.*) He also stated that he thought she lived there alone and that he heard Sammy had moved out. (*Id.*)

16. Chief Sprinkle denies any knowledge of any touching or search of the person of

either Branson or Farmer, because their night clothes did not present a threat to the officers.

17. The search of the residence uncovered the following: an automatic knife, a wooden box commonly used to hold marijuana, a clear plastic bag containing a green, leafy substance for which a field test was positive for marijuana, a pill identification book, and a brass smoking pipe commonly used to smoke marijuana with a burnt residue smelling of marijuana, all found in the bedroom, and a metal cigarette case containing a Bic pen casing, small scales, and an Allen wrench with marijuana residue found in a file cabinet in the kitchen. (Sprinkle Affidavit ¶ 15).

18. Upon taking possession of these items, Chief Sprinkle alleges that Branson and Farmer were brought back into the Residence. (*Id.* at ¶ 16).

19. Branson admitted the confiscated items were hers in a written statement in her own handwriting. (Sprinkle Affidavit ¶ 16; Exhibit 7 to Sprinkle Affidavit).

20. Chief Sprinkle advised Branson that she would be charged with marijuana possession and paraphernalia possession, but would not be arrested. (Sprinkle Affidavit ¶ 17). Branson was advised by Chief Sprinkle that the court would issue a summons for the charges and that she would have to appear in court. (*Id.*)

21. Farmer was advised that he would not be charged. (*Id.*)

**II. Summary Judgment Standard**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca* 555 F.3d 582, 584 (7th Cir. 2009). Nevertheless, "the [c]ourt's favor toward the non-moving party party does not extend to drawing inferences that are supported only by speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2000). "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

### III. Discussion

Plaintiffs Branson and Ray S. Farmer ("Farmer") (collectively, "Plaintiffs") brought this civil action against the Defendants alleging state law claims and violations of 42 U.S.C. § 1983 ("Section 1983"). The Defendants seek summary judgment on all claims, with the exception of Branson's sexual assault claim.

#### A. Claims Against Newburgh Police Department

To begin, the court notes that Plaintiffs filed their Section 1983 suit against both the NPD and the Town. While Section 1983 liability applies to municipalities and other local government units, *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), state law determines the liability of local government under Section 1983, *McMillan v. Monroe Cnty.*, 520 U.S. 781, 786 (1997). Under Indiana law, a municipal

7

police department is neither established as a separate legal entity nor granted the capacity to sue or be sued. *Martin v. Fort Wayne Police Dept.*, 2011 WL 781383, at *6 (N.D.Ind. February 28, 2011). "Because a city's police department 'is merely a vehicle through which the city government fulfills its policy functions,' it is not a proper defendant in a civil rights suit under § 1983." *Mason v. City of Indianapolis*, 2007 WL 2700193, at *8 (S.D.Ind. Sept. 11, 2007) (quoting *Jones v. Bowman*, 694 F.Supp. 538, 544 (N.D.Ind. 1988)); *see also Martin*, 2011 WL 781383, at *6 (finding that a police department is a division or arm of the municipality and therefore not a suable entity under Section 1983). Therefore, the NPD is not a suable entity in this action, and Defendants' motion for partial summary judgment with respect to the NPD is **GRANTED**.

    **B.**    **Fourth Amendment Claims**

To succeed on a claim under Section 1983, a plaintiff must show that the defendant deprived the plaintiff of a right secured by the Constitution or federal law by a person acting under the color of state law. *Thurman v. Village of Homestead*, 446 F.3d 682,687 (7th Cir. 2006). The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Here, Plaintiffs claim that the remaining Defendant, the Town, through the actions of Chief Sprinkle, deprived them of their right to be free of unreasonable searches and seizures under the Fourth Amendment and their right to due process under the Fourteenth Amendment.

Specifically, Plaintiffs allege that (1) the warrant to search Branson's apartment lacked probable cause, and (2) the search was unreasonable.

### 1. Probable Cause

The Town asserts that the officers' entry into the Residence was premised upon a facially valid search warrant supported by probable cause. The search warrant was based on the testimony of Chief Sprinkle, who relayed information provided by an informant. The Town argues that the Informant's account of an illegal drug transaction at the Residence, combined with declarations against his penal interest, establish the Informant's credibility. On the other hand, Plaintiffs insist that the information provided by Chief Sprinkle to the issuing judge failed to demonstrate the credibility of the Informant; therefore, without this indicia of reliability, the judge did not have probable cause to issue the warrant.

The court defers to the issuing judge's initial determination of probable cause if substantial evidence exists in the record to support the judge's decision. *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002). When a judge is presented with only an affidavit, or in this case an officer's testimony, the validity of the warrant rests solely on the contents of the affidavit (or testimony). *Id.* at 866. When an informant supplies the facts provided to the issuing judge, the probable cause determination turns on the informant's credibility. *United States v. LC Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). In making this determination, the court considers (1) the extent to which the police have corroborated the informant's statements, (2) the degree to which the informant's

statements were based on personal observation, (3) the amount of detail provided, and (4) the interval between the date of the events and the police officer's application for the search warrant. *Koerth*, 312 F.3d at 866. The court also considers whether the informant personally appeared or testified before the issuing judge, thus allowing the judge to assess the informant's credibility. *LC Bell*, 585 F.3d at 1049. No one factor is dispositive; therefore, a deficiency in one factor may be redressed by a strong showing in another factor. *Id.*

Chief Sprinkle relied solely on the statements of the Informant in his testimony before Judge Meier. (*See* Transcript of Hearing). Although Chief Sprinkle stated that the Informant purchased cocaine found in his vehicle at the Residence, his testimony fails to provide any information to establish the Informant's credibility. (*See id.*). Chief Sprinkle provided no police corroboration of the Informant's statements and did not indicate whether the Informant had provided information to law enforcement in the past. *See LC Bell*, 585 F.3d at 1050 (officer's failure to indicate whether the informant had provided accurate information in the past contributed to a finding that the warrant lacked probable cause) (citing *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (although police corroboration was imperfect, informant's history of providing accurate and reliable information in the past was persuasive in determining existence of probable cause)). Also, the judge did not have the opportunity to assess the Informant's credibility, because he did not appear before the issuing judge. (Transcript of Hearing 7:12-14).

Despite the Town's assertions to the contrary, the lack of detail provided by the

Informant further calls into question his credibility. For example, Chief Sprinkle's testimony gave no information about the Informant's relationship with Branson, who resided at the Residence, and Chief Sprinkle admitted that the Informant did not tell him what the relationship between Price and Branson was (Transcript of Hearing 4:15-23). *See LC Bell*, 585 F.3d at 1050 (lack of information regarding the relationship between informant and alleged drug dealer, who resided in the apartment searched pursuant to the warrant, contributed to the finding that the warrant lacked probable cause). In other words, the court has no idea how the Informant and Branson knew each other. For all the court knows, the Informant could have been an angry customer of Price, Branson's jealous ex, or had some other conflict with Price or Branson. *See id*. (without knowledge of the informant's and defendant's relationship, the informant could have been a rival drug dealer, an angry customer, or had some other beef" with the defendant, which is certainly a factor to consider when assessing reliability). If more details of the relationship between the Informant and Branson had been provided, the judge could have determined that the Informant had reason to know what was inside Branson's apartment, which would have bolstered the Informant's credibility. *See United States v. Peck*, 317 F.3d 754, 758 (7th Cir. 2003) (knowledge of the resident's relationship with the informant may have bolstered the informant's credibility, because someone close to the resident is more likely to know that drugs are in the house). Also, Chief Sprinkle gave no indication of the amount of cocaine, if any, in the Residence other than what the Informant purchased.

Furthermore, the Informant did not, as the Town argues, establish his credibility through a declaration against his penal interest. The Town cites *Creekmore v. State*, in which the informant implicated himself in the delivery of marijuana after being found in possession of the drug. 800 N.E.2d 230, 235 (Ind.Ct.App. 2003). Here, the Informant was found in possession of cocaine; however, his account to Chief Sprinkle only provided the location and from whom he purchased the cocaine and did not implicate him in the delivery or distribution of the drug. Because he did not further implicate himself, the Informant's account of the drug transaction was not a declaration against penal interest and therefore did not establish his credibility.

Although the Informant's account was based on personal observations of a drug transaction that allegedly occurred at the Residence earlier that day, these factors alone are not enough to establish the Informant's credibility. The Informant did not appear before the issuing judge, did not criminally implicate himself, and had no history of providing reliable information to police. Additionally, the Informant's account as relayed by Chief Sprinkle lacks detail, and the information was not corroborated by police. Based on the totality of the circumstances, the Informant cannot be considered reliable. Because the search warrant issued was based solely on the account of an unreliable informant, the search warrant lacked probable cause.

### 2. Unreasonable Search

Plaintiffs argue that the execution of the search warrant was unreasonable, because they were not afforded a reasonable opportunity to get to the door, and because the

destruction of Plaintiffs' property during the search was deliberate and unnecessary. The key inquiry of a Fourth Amendment claim is whether the challenged action was reasonable. *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2003). Reasonableness is determined by the totality of the circumstances, and by balancing the degree to which the action intrudes on an individual's privacy with the degree to which the action promotes a legitimate government interest. *Id.* (citations omitted). The "knock and announce" principle, *Green*, 420 F.3d at 695, and excessive or unnecessary destruction of a citizen's property during a search, *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003), are elements of a Fourth Amendment reasonableness inquiry. Traditionally, officers must knock on the door and announce their identity and purpose before attempting a forcible entry of a dwelling. *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). "[O]fficers must wait a reasonable amount of time after announcing their intention to serve a search warrant before attempting a forcible entry." *Id.* at 934.

The Town contends, and the court agrees, that the officers did not violate the "knock and announce" rule, because the officers waited a reasonable amount of time after knocking and announcing their presence before attempting a forcible entry, and because they had reason to believe that evidence could readily be destroyed once the occupants became aware of their presence. The Residence being searched was a second story apartment, not a sprawling house, and there was no reason to think the occupant could not hear the officers knock and announce their presence; therefore, a wait of ten seconds was sufficient. *See United States v. Jones*, 214 F.3d 836, 843-44 (7th Cir. 2000) (holding that

13

a wait of seven seconds after knock and announcement was sufficient to justify use of a battering ram to break open an apartment door); *see also United States v. Markling*, 7 F.3d 1309, 1318 (7th Cir. 1993) (finding that a wait of seven seconds was sufficient where the apartment was small and there was no reason to think occupant could not hear the police knock and announce). Additionally, the search warrant authorized forcible entry to execute the warrant if the executing officer was not admitted following an announcement of his statement and purpose. (Search Warrant 2). Under these circumstances, the officers' attempted forcible entry was reasonable.

Regarding the alleged destruction of Plaintiff's property, such as the deliberate tearing up and/or breaking of property, kicking a pet, and spitting in a sink, Plaintiffs failed to put forth any evidence regarding the allegedly damaged property's condition before the search or any specific evidence that their property was damaged. Plaintiffs rest merely on their allegations that their property was damaged due to the search. Without evidence, Plaintiffs cannot prove that Chief Sprinkle and the officers harmed Branson's property at all, let alone unreasonably. *See Heft*, 351 F.3d at 282-83 (finding that plaintiff's failure to provide evidence other than her claim that the police harmed her property at all precluded a finding that the police harmed her property unreasonably). Because the officers' attempted forcible entry was justified, and Plaintiffs provide no evidence of any unnecessary destruction of property, the search of the Residence was not unreasonable.

Accordingly, although the search was not unreasonable, the search warrant was not

supported by probable cause in violation of Plaintiffs' Fourth Amendment rights.

### C. Municipal Liability

If a municipality, through a policy or custom, deprives someone of their constitutional rights, then the municipality is liable under Section 1983. *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). A municipality can be found liable under Section 1983 for violating a plaintiff's rights in three ways: "(1) through an express policy that, when enforced causes a constitutional deprivation; (2) through a widespread practice that although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final policy-making authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Contrary to Plaintiffs' assertion, "[t]he doctrine of respondeat superior is unavailable under Section 1983." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 694). However, "'a single act or decision of a final policymaker can establish municipal policy.'" *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir. 2004) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)). Plaintiffs rely on the third option, claiming that the violation of Plaintiffs' Fourth Amendment rights was caused by Chief Sprinkle, who they submit is the final policymaker at the time for his municipal police department.

State law determines whether a person possesses final policy-making authority, and therefore can subject a municipality to liability through his or her actions. *Id.* at 686.

In Indiana, a police chief is the final policymaker for his municipal police department. *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995) (citing Ind. Code § 36-8-3-3(g)). Accordingly, Chief Sprinkle is the final policymaker for the Newburgh Police Department, and his actions can subject the Town to liability under Section 1983. *See id.* Because Plaintiffs' rights under the Fourth Amendment were violated, the remaining issue is whether Chief Sprinkle caused Plaintiff's constitutional injury.

The Town erroneously contends that the pat down search of Branson is the only act which could constitute a violation of Plaintiffs' constitutional rights, of which there is no proof that Chief Sprinkle participated. As the court previously found, the search pursuant to a warrant that lacked probable cause constitutes a violation of Plaintiffs' Fourth Amendment rights. Not only did Chief Sprinkle interview the Informant, apply for the search warrant, and testify before the issuing judge as to the Informant's statements, he also participated in the execution of the search warrant. Due to his involvement in the actions that form the basis of Plaintiffs' Fourth Amendment claim pursuant to Section 1983, the Town is subject to liability. *See McAllister v. Town of Burns Harbor*, 693 F.Supp.2d 815, 822 (N.D.Ind. 2010) (holding that the town was subject to liability for a Section 1983 excessive force claim for the actions of the police chief). Accordingly, the Defendants' motion for partial summary judgment is **DENIED** with respect to Plaintiffs' Section 1983 claim of violations of their Fourth Amendment rights.

### D. Indiana Constitutional Claim

Plaintiffs also allege a violation of Section 11 of Article 1 of the Indiana Constitution, which mirrors the Fourth Amendment of the United States Constitution and provides protection against unreasonable searches and seizures. Left unmentioned by the parties is the lack of an implied right of action in the Indiana Constitution for a violation of Section 11. *See Kucenko v. Marion Cnty. Sheriff*, 2007 WL 1650939 (S.D.Ind. June 1, 2007). As the Indiana Supreme Court noted in *Cantrell v. Morris*, there is no need to create a new cause of action when existing tort law amply protects a right guaranteed by the Indiana Constitution. 849 N.E.2d 488, 498 (Ind. 2006) ("a constitutional provision can supply the duty required for a conventional tort claim") (cited by *Kucenko*, 2007 WL 1650939, at *6 (S.D.Ind. June 1, 2007)). Therefore, to the extent Plaintiff is seeking damages for a violation of the Indiana Constitution, the Defendants' motion for partial summary judgment as to any claims arising under the Indiana Constitution is **GRANTED**.

### E. State Law Tort Claims

While Plaintiffs attempt to allege state law tort claims in their Complaints, many of the claims are not cognizable. Plaintiffs' state law tort claims against the Town appear to include malicious prosecution, false arrest, abuse of office, negligent and/or intentional infliction of emotional distress, destruction and/or loss of property, and sexual assault. The Town asserts that all of Plaintiffs' state law tort claims, with the exception of Branson's sexual assault claim, which is not addressed by the Town's motion for partial

17

summary judgment, are not cognizable or are otherwise barred by the Indiana Tort Claims Act's ("ITCA") immunity provision.

To the extent Plaintiffs' claims included malicious prosecution and abuse of process, Plaintiffs acknowledge in the Response Brief that "plaintiffs have not filed a claim for malicious prosecution" and that "the defendants have misconstrued [Plaintiff's] claim as one for malicious prosecution and abuse of process." (Response Brief 9, 14). Additionally, to the extent Plaintiffs claim false arrest, they concede that they "did not allege that they were arrested or incarcerated . . . ." (*Id.* at 9). Finally, Plaintiffs concede "that their claims do not entitle them to punitive damages under federal or state law." (*Id.* at 14). Therefore, even if any claims of malicious prosecution, abuse of process, and false arrest were made in the Complaints, Plaintiffs waived those claims in their Response Brief.

Regarding Plaintiffs' remaining state law tort claims, the ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). "Further, 'to receive immunity under this section of the ITCA, a defendant must: (1) be engaged in the enforcement of law; and (2) act within the scope of employment.'" *Hendricks v. New Albany Police Dept.*, 749 F.Supp.2d 863, 873 (S.D.Ind. 2010) (quoting *Parish v. City of Elkhart*, 2010 WL 4054271, at *2 (N.D.Ind. Oct. 15, 2010)). Because

there is no false imprisonment claim and Plaintiffs waived any claim of false arrest, any other state law tort claim asserted by Plaintiffs that meets these requirements is subject to immunity under the ITCA.

Plaintiffs concede that Chief Sprinkle and the officers were acting within the scope of employment with regard to the actions in question. (Response 12-13). Thus, although Plaintiffs' state law tort claims are difficult to discern, under the ITCA the Town is immune from suit with respect to Plaintiffs' state law tort claims. *See Hendricks*, 749 F.Supp.2d at 873 (citing *Parish*, 2010 WL 4054271, at *4 (finding that the City of Elkhart was immune from intentional infliction of emotional distress ("IIED") claim, because "[c]ommon law 'add-on' torts, such as IIED, are not exceptions to the law enforcement immunity under the ITCA")). Accordingly, the Defendants' motion for partial summary judgment is **GRANTED** as to Plaintiffs' state law tort claims.

## IV. Conclusion

For the reasons set forth above, the court **DENIES in PART** Defendants' Motion for Partial Summary Judgment (Docket # 29) as to liability with respect to Plaintiffs' claim of a violation of their rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and **GRANTS in PART** Defendants' Motion as to liability with respect to Plaintiffs' claims under the Indiana Constitution, state law tort claims, and

punitive damages claims under federal and state law.

**SO ORDERED** this 15th day of July 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

R. Thomas Bodkin
BAMBERGER FOREMAN OSWALD & HAHN
tbodkin@bamberger.com

Dwight Timothy Born
TERRELL BAUGH SALMON & BORN LLP
tborn@tbsblaw.com

Mark Kelly Phillips
MARK K. PHILLIPS, ATTORNEY AT LAW, P.C.
markphillipslawyer@yahoo.com